JOHN R. BOBAY (CSB No. 78993)
LAW OFFICES OF JOHN R. BOBAY
50 Hill Crest Court
San Anselmo, CA 94960
TEL: (415) 457.0720
FAX: (415) 366.2228
EMAIL: jrbobay@pacbell.net

MICHAEL J. PLOCKI (CSB No. 188120)
MICHAEL PLOCKI LAW GROUP
1108 Fifth Avenue, Suite 200
San Rafael, CA 94901
TEL: (415) 275.0466
FAX: (415) 329.1451
EMAIL: mplocki@plockilaw.com

Attorneys for Plaintiff
MICHAEL SULLIVAN

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHAEL SULLIVAN,<br><br>                    Plaintiff,<br><br>vs.<br><br>FORD MOTOR COMPANY, and THIEMAN TAILGATES, INC.,<br><br>                    Defendants. | CASE NO. 3:16-cv-03505-JST<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO FORD MOTOR COMPANY'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Date:      November 3, 2016<br>Time:      2:00 p.m.<br>Location: Courtroom 9 – 19th Floor<br>Judge:     Jon S. Tigar<br><br><u>Filed Concurrently Herewith</u>:<br>Declaration of Michael J. Plocki;<br>Request for Judicial Notice; and<br>Notice of Non-California Slip Opinions |

MICHAEL PLOCKI LAW GROUP
1108 Fifth Avenue, Suite 200
San Rafael, CA 94901

MICHAEL PLOCKI LAW GROUP
1108 Fifth Avenue, Suite 200
San Rafael, CA 94901

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... iii

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. INTRODUCTION ..... 1

II. STATEMENT OF THE ISSUES ..... 2

III. STATEMENT OF THE FACTS ..... 2

IV. ARGUMENT ..... 7

A. THERE IS GENERAL JURISDICTION OVER FORD ..... 9

1. The U.S. Supreme Court's Decision in *Daimler* Does Not Change The Circumstances Regarding This Court's Exercise Of General Jurisdiction Over Ford ..... 9

2. Ford's Affiliations With California Are So Substantial And Of Such A Nature As To Render It "At Home" In California ..... 11

B. FORD'S CALIFORNIA ACTIVITIES ARE SUBSTANTIALLY CONNECTED TO PLAINTIFF'S CLAIMS TO SUPPORT SPECIFIC JURISDICTION ..... 15

1. Purposeful Availment ..... 17

2. Arise From Or Is Related To ..... 18

3. The Reasonableness of Specific Jurisdiction ..... 20

C. FORD'S MOTION IS INCHOATE BECAUSE PLAINTIFF HAS NOT YET HAD AN OPPORTUNITY TO CONDUCT JURISDICTIONAL DISCOVERY ..... 22

V. CONCLUSION ..... 24

MICHAEL PLOCKI LAW GROUP
1108 Fifth Avenue, Suite 200
San Rafael, CA 94901

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Asahi Metal Industry Co. v. Superior Court,*
480 U.S. 102 (1987) ............................................................................ 6, 7, 9, 20, & 21

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462, 472 (1985) ………………………………………………………..…..17

*Cahen v. Toyota Motor Corp.,*
 147 F.Supp.3d 955 (N.D. Cal. 2015) ............................................................... 7

*Daimler AG v. Bauman,*
 ___ U.S.___, 134 S. Ct. 746 (2014) ...........................................1, 3, 8, 9, 10, 11, 13 & 14

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
 ___ U.S.___, 131 S. Ct. 2846 (2011) ......................................... 1, 7, 9, 10 & 14

*Helicopteros Nacionales de Colombia v. Hall,*
466 U.S. 408 (1984) .........................................................................8, 9, & 16

*International Shoe Co. v. Washington,*
326 U.S. 310 (1945) ........................................................................1, 7, & 10

*Keeton v. Hustler Magazine, Inc.,*
465 U.S. 770 (1984) ....................................................................... 9

*Kulko v. California Superior Court,*
436 U.S. 84 (1978) .......................................................................... 8

*World-Wide Volkswagen Corp. v. Woodson,*
444 U.S. 286 (1980) ........................................................................ 5

## STATE CASES

*Bridgestone Corp. v. Superior Court,*
99 Cal. App. 4th 767 (2002) ...............................................................21 & 22

*Bristol-Myers Squibb Company v. Superior Court,*
__ P.3d __ , WL 4506107 (2016) ...................................15, 16, 17, 18, 19, & 20

*Goehring v. Superior. Court,*
62 Cal. App. 4th 894 (1998) ................................................................ 22

*HealthMarkets, Inc. v. Superior Court,*
 l71 Cal. App. 4th 1160 (2009) ............................................................ 24

*Hurtado v. Superior Court,*
11 Ca1.3d 574 (1974) ..................................................................... 21

*Magnecomp Corp. v. Athene Co.,*
209 Cal. App. 3d 526 (1989) .............................................................. 22

*Mihlon v. Superior Court,*
169 Cal. App. 3d 703 (1985) ........................................................................... 22

*Sibley v. Superior Court,*
16 Ca1.3d 442 (1976)....................................................................................... 7

*Vons Companies, Inc. v. Seabest Foods, Inc.*
14 Cal. 4th 434 (1996) ..............................................................................19 & 20

## DOCKETED CASES

*John Magill v. Ford Motor Company, et al.,*
Case No. 2015CV32019 (2015) ...................................................................... 15

*State ex rel. Ford Motor Company v. McGraw,*
No. 15-1149 (W. Va. May 18, 2016) ................................................................ 2

*Irene Jeffs v. Anco Insulations, et al.,* Circuit Court
for the Third Judicial Circuit, Madison County, Illinois,
Case No. 15-L-533 (2015) ..........................................................................15

## FEDERAL STATUTES

*Fed. R. Civ. P.* 12(b)(2) ................................................................................ 1

## STATE STATUTES

*Cal. Civ. Proc. Code*
§ 410.10 (West 2016) ....................................................................................... 7

MICHAEL PLOCKI LAW GROUP
1108 Fifth Avenue, Suite 200
San Rafael, CA 94901

MP&A iso OPPOSITION TO FORD'S MOTION TO DISMISS

MICHAEL PLOCKI LAW GROUP
1108 Fifth Avenue, Suite 200
San Rafael, CA 94901

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff MICHAEL SULLIVAN ("Plaintiff") hereby submits the following opposition to Defendant FORD MOTOR COMPANY's ("Ford") Motion to Dismiss First Amended Complaint for Lack of Personal Jurisdiction pursuant to *Fed. R. Civ. P*. 12(b)(2).

## I.

## INTRODUCTION

Plaintiff suffered catastrophic injuries in this case. Both bones of Plaintiff's lower left leg were crushed. There was deep peroneal nerve damage to his left leg. His left foot/toes were crushed and his lower back and right hip were severely injured. His injuries occurred in California and were substantially caused by a Ford truck licensed and registered in California. Whether the Ford truck was manufactured outside of California is immaterial, because it was sold and/or distributed to California, where the defect manifested. Equally significant here is that Plaintiff is a California resident; the evidence and witnesses are located in California; defendant Thieman Tailgates, Inc. does not dispute this Court's jurisdiction; and Ford does not dispute that it has substantial contacts with California. Therefore, the maintenance of the suit against Ford here "would not offend 'traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

**Unlike this case**, the cases relied upon by Ford, i.e., *Daimler AG v. Bauman*, ___ U.S.___, 134 S. Ct. 746 (2014), and *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011), had little or no factual connections whatsoever to the United States. Those cases involved international considerations which are not present here. The West Virginia Supreme Court recently found those cases inapplicable because:

> Daimler was a German corporation, and every act complained of took place not only outside California, but also outside the United States. *Goodyear* involved Turkish, French, and Luxembourgian

entities, and the product defect complained of manifested in injury in France.

*State ex rel. Ford Motor Company v. McGraw*, No. 15-1149 (W. Va. May 18, 2016), at 26,

Attached as Exhibit 1 to the accompanying Notice of Lodging Non-California Slip Opinions.

As such, this Court must deny Ford's motion because Ford is "at home" in California for general jurisdiction purposes and because Ford's California activities arise out of and are sufficiently related to the Plaintiff's suit to support the invocation of specific jurisdiction in this case.

## II.

## STATEMENT OF ISSUES

Does this Court have general jurisdiction over Ford?

Does this Court have specific jurisdiction over Ford?

Even if Plaintiff had not made a prima facie case of jurisdiction, is Ford's motion inchoate prior to jurisdictional discovery?

## III.

## STATEMENT OF FACTS

Plaintiff was injured on April 25, 2014 when he was delivering food supplies to inmates at the Santa Rita prison facility in Dublin, California. Plaintiff's injuries were substantially caused by the Ford Diesel Truck and the component lift gate manufactured by Thieman Tailgates, Inc., (hereinafter the "lift gate").

While exiting the back end or cargo area of the Ford Truck, Plaintiff was standing on the lift gate waiting to be lowered to the ground, when suddenly and without warning the Ford Truck malfunctioned. The metal plates of the lift gate, components of the Ford Truck, opened up causing Plaintiff to suddenly drop several feet downward. Plaintiff's legs became trapped

MICHAEL PLOCKI LAW GROUP
1108 Fifth Avenue, Suite 200
San Rafael, CA 94901

between the metal plates, which crushed his leg bones, nerves, and foot, and severely injuring his lower back and right hip.

On April 25, 2016, Plaintiff filed suit against Ford and Thieman Tailgates, Inc. ("Thieman") in the California Superior Court . On June 23, 2016, Thieman removed this action to Federal Court based on diversity grounds. Ford joined in the petition and demanded a jury trial.    On July 29, 2016, Plaintiff filed his First Amended Complaint ("FAC"), to which Thieman answered. On September 6, 2016, Ford filed its Motion to Dismiss.

Although Ford contends that it is incorporated in the State of Delaware and has its principal place of business in Dearborn, Michigan, that alone is not sufficient to avoid this Court's jurisdiction. See Ford's Motion 4:20-21. The U.S. Supreme Court has never held that a corporation may be subject to general jurisdiction only in a forum where it is incorporated or has its principal place of business. *Daimler*, *supra*, 134 S.Ct. at 754. Indeed, Ford is a very sophisticated, multi-national corporation which has long maintained, and to this day still maintains, an enduring and pervasive presence in California.

Public records that have been obtained by Plaintiff in support of this opposition reveal that Ford has engaged in continuous economic activity in, and has maintained substantial contacts with, California. Such activities and contacts include, but by no means are limited to, the following:

- Ford has continuously maintained its registration with the California Secretary of State since 1920 and has regularly conducted business in the State of California since that time. See Exhibit A to the Declaration of Michael J. Plocki ("Plocki Decl."), ¶ 2 filed herewith.

- Ford owns and/or occupies various businesses and offices throughout California, including in Irvine, Palo Alto, and Sacramento. Plocki Decl., ¶¶ 3-7.

- The Irvine, California location is considered Ford's regional headquarters and is a two-story office building and design center located at 3 Glenn Bell Way. Plocki Decl., Exh. B, ¶ 3.

MICHAEL PLOCKI LAW GROUP
1108 Fifth Avenue, Suite 200
San Rafael, CA 94901

MICHAEL PLOCKI LAW GROUP
1108 Fifth Avenue, Suite 200
San Rafael, CA 94901

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- On February 25, 2000, the Los Angeles Times reported that Ford Motor Co. will move the U.S. headquarters of its foreign and domestic luxury lines to Irvine, creating 225 jobs and cementing Orange County as the hub of Southern California's burgeoning automotive industry.  *Id.*

- The Palo Alto, California location is the home of Ford's Research & Innovation Center, which is a 25,000 square foot facility and is located at 3200 Hillview Avenue. According to Ford Motor Company, it is one of the largest automotive manufacturer research centers in the region, and employs more than 130 researchers, engineers and scientists.  Plocki Decl., Exh. C, ¶ 4.

- Ford actively solicits employees for jobs in California, including at its Palo Alto, California Research & Innovation Center.  Plocki Decl., Exh. D, ¶ 5.

- Ford has an office in Sacramento, the state capitol, to lobby the state on the company's behalf.  Ford's California lobbyist is Melanie Weigner, who works at Ford's Sacramento office located at 925 L Street, Sacramento California.  Plocki Decl., Exh. E, ¶ 6.

- Ford previously operated large manufacturing assembly plants in California, including Richmond and Long Beach, California.  Plocki Decl., Exh. F, ¶ 7.

- Due to the impact and influence Ford had on the state of California, California named a city after Ford called "Ford City, California."  Plocki Decl., Exh. G, ¶ 8.

- Ford recently acquired San Francisco, California based Chariot, a bike-sharing and commuter shuttle-service company, which operates 28 routes in San Francisco and provides thousands of rides each day.  Ford's CEO Mark Fields announced that "[Ford] wants to change the way the world moves."  Plocki Decl., Exh. H, ¶ 9.

- Ford recently announced that it is investing in and developing fully autonomous vehicles at its Palo Alto, California, Silicon Valley campus, more than doubling its work force there.  Plocki Decl., Exh. I, ¶ 10.

- Ford currently has one-hundred and eighty-two (182) dealerships in the State of California, which are duly authorized agents of Ford Motor Company and which service, solicit and sell Ford vehicles to California residents.  Plocki Decl., ¶ 11.

- Ford actively markets its vehicles for sale in the State of California, including by use of print, radio, television, and other form of advertising for the specific purpose of targeting customers in California.  Plocki Decl., ¶ 12.

- Ford sold over 200,000 new cars and trucks in California in 2015, and nearly 200,000 in 2014.  Plocki Decl., Exh. J, ¶ 13.

- Ford is the number one seller of pick-up trucks, sporty compact vehicles, and mid-size SUVs in California.  Plocki Decl., Exh. J, ¶ 14.

- Galpin Ford of North Hills, California, was named the number one volume Ford dealer in the world for a record 25th consecutive year.  Plocki Decl., Exh. K, ¶ 15.

- Ford recently invested $1 million in education and community programs in California.  Plocki Decl., Exh. L, ¶ 16.

- Ford was fined $2.96 million by the California Air Resources Board for violations of air quality laws related to the sale of vehicles with non-compliant On-Board Diagnostic systems in California.  Plocki Decl., Exh. M, ¶ 17.

- The Ford Motor Credit Company, LLC, regarded as the financial services arm of Ford and a wholly owned subsidiary of Ford, has conducted business in California since 2007.  Plocki Decl., Exh. N, ¶ 18.

- Ford has litigated numerous cases in California without asserting any objection to the Court's jurisdiction.  Plocki Decl., Exh. O, ¶ 19.

- As seen in *State ex rel. Ford Motor Company v. McGraw*, No. 15-1149 (W. Va. May 18, 2016), Ford maintains indemnity agreements with its dealerships wherein Ford agrees to indemnify its dealerships and provide a defense in litigation.  Plocki Decl., Exh. H, ¶ 20.

The facts presented above demonstrate that Ford has so consistently and intentionally targeted California as an established market within its national sales campaign that it has long had the reasonable expectation that it would be "haled" into California courts to answer for injuries alleged to have arisen "directly or indirectly" from that national campaign.  *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980).

The critical inquiry in this case is whether "[Ford's] conduct and connection with [California] are such that [Ford] should reasonably anticipate being haled into court [here]." *Id.* at 297.  Thus, if a corporation "delivers its products into the stream of commerce with the

MICHAEL PLOCKI LAW GROUP
1108 Fifth Avenue, Suite 200
San Rafael, CA 94901

expectation that they will be purchased by consumers in the forum State," a forum state may exercise jurisdiction without exceeding its powers under the due process clause. *Id*. at 298.

In *Asahi Metal Industry Co. v. Superior Court*, United States Supreme Court Justice, William J. Brennan, in a concurring opinion joined by three other justices, explained, "[a]s long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit cannot come as a surprise…A defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity." *Asahi Metal Industry Co. v. Superior Court* (1987) 480 U.S. 102, 117.

Requiring Ford to defend this action in California is fair and reasonable for the following reasons:

(1) California has the greatest interest in hearing this matter;

(2) Plaintiff is a California resident;

(3) the accident occurred in California;

(4) the injury-causing product, a Ford truck, was sold and/or distributed to California;

(5) the defect manifested in California;

(6) the witnesses are located in California; and

(7) this Court's jurisdiction has already been established in regard to defendant Thieman Tailgates, Inc.

Accordingly, Ford's motion must be denied because the facts demonstrate that this Court has both general and specific jurisdiction over Ford.

Even if Plaintiff did not have those facts, then Plaintiff should be granted leave to conduct jurisdictional discovery. As of yet, no jurisdictional discovery has been conducted because all discovery, jurisdictional or otherwise, is barred until the parties' Rule 26(f)

MICHAEL PLOCKI LAW GROUP
1108 Fifth Avenue, Suite 200
San Rafael, CA 94901

MP&A iso OPPOSITION TO FORD'S MOTION TO DISMISS

conference.  Accordingly, Plaintiff requests the Court to deny Ford's motion as inchoate and allow Plaintiff to conduct discovery on this issue.

**IV.**

**ARGUMENT**

"When no federal statute governs personal jurisdiction, a district court applies the long-arm statute of the state in which it sits."  *Cahen v. Toyota Motor Corp.* 147 F.Supp.3d 955, 961 (N.D. Cal. Nov. 25 2015.)  Here, California's long-arm statute permits a court to exercise personal jurisdiction to the fullest extent consistent with constitutional due process. *Cal. Civ. Proc. Code (CCP)* § 410.10 (West 2016). Due process requires that a non-resident defendant have "certain minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Cahen, supra* 147 F.Supp.3d at 961, *quoting International Shoe.*

A California court may exercise jurisdiction on any basis that is not inconsistent with the Constitution of the State of California or of the United States. *CCP* § 410.10. According to the United State Supreme Court in *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. l02 (1987), California Code of Civil Procedure Section 410.10 is commonly referred to as California's "long-arm" statute. *Asahi, supra*, 480 U.S. at 106.  This is because the statute, with respect to personal jurisdiction, "manifests an intent to confer on California courts the broadest possible jurisdiction, limited only by constitutional considerations." *Sibley v. Superior Court,* 16 Ca1.3d 442, 445 (1976).

In *Goodyear* , the United States Supreme Court reaffirmed that the "canonical opinion in this area remains *International Shoe Co." Goodyear, supra,* 131 S.Ct. at 2853.  Quoting *International Shoe*, the United States Supreme Court held that "a State may authorize its courts

MICHAEL PLOCKI LAW GROUP
1108 Fifth Avenue, Suite 200
San Rafael, CA 94901

MICHAEL PLOCKI LAW GROUP
1108 Fifth Avenue, Suite 200
San Rafael, CA 94901

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

to exercise personal jurisdiction over an out-of-state defendant if the defendant has certain minimum contacts with the State such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (internal quotation marks omitted)

There are two categories of personal jurisdiction: specific and general. *Daimler*, *supra*, 134 S.Ct. at 754.  "A court may assert general jurisdiction by a court over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State. *Id.* (internal quotation marks omitted)

With respect to a corporation, while the place of incorporation and principal place of business are " 'paradig[m] … bases for general jurisdiction.' " , the Supreme Court clarified that it has not held that a corporation may be subject to general jurisdiction *only* in a forum where it is incorporated or has its principal place of business" *Id*. at p.760.  Rather, the Supreme Court stated that where a corporation's operations in a forum other than its formal place of incorporation or principal place of business are so substantial and of such a nature as to render the corporation at home in that State, general jurisdiction may be asserted. *Id*. at 761 & n. 19.

Factors leading to the conclusion that a defendant's contacts in the forum are continuous and systematic so as to render it at home include the maintenance of an office, presence of employees, the use of bank accounts, and the marketing or selling or products in the forum state. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 415(1984).  Because the "minimum contacts" test is not susceptible of mechanical application, *Kulko v. California Superior Court,* 436 U.S. 84, 92 (1978), these listed factors are not exhaustive; they provide guidance as to the type and degree of contacts the defendant must have in order to justify the exercise of general jurisdiction.

Specific jurisdiction over a defendant may be asserted when the defendant has "purposefully directed" its activities at the forum state, *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 774 (1984); the plaintiff's claims are related to or arise out of these forum-directed activities, *Helicopteros, supra*, 466 U.S. at 414; and, the exercise of jurisdiction is reasonable. *Asahi*, *supra*, 480 U.S. at 113.

## A. THERE IS GENERAL JURISDICTION OVER FORD

### 1. The U.S. Supreme Court's Decision in *Daimler* Does Not Change The Circumstances Regarding This Court's Exercise Of General Jurisdiction Over Ford

Ford offers no supportable argument as to how or why *Daimler* changes the legal landscape of personal jurisdiction in regards to the case at bar. *Daimler* does not change the circumstances herein and has little to no bearing as to whether the State of California can exercise general jurisdiction over Ford. Rather, *Daimler* is merely an application of the concept of general jurisdiction already established in *Goodyear, supra*. *Daimler* is not a clarification or expansion of *Goodyear*, but rather an application of the concept embedded within *Goodyear* to a case whose facts are fundamentally different than the facts in the instant action.

The West Virginia Supreme Court distinguished the facts in *Daimler* as follows:

> *Daimler* involved an unusual fact setting with no connection whatsoever to the United States. In *Daimler,* twenty-two Argentinian residents filed a complaint in federal district court in California against Daimler Chrysler Aktiengesellschaft ("Daimler"), a German company that manufactures Mercedes-Benz automobiles in Germany. The complaint alleged that, in the late 1970s and early 1980s, during what is known as Argentina's "Dirty War," Daimler's Argentinian subsidiary collaborated with state security forces to kidnap, detain, torture, and kill Argentinian workers at the subsidiary facility. Jurisdiction in California was predicated on the California contacts of a Daimler subsidiary incorporated in Delaware with a principal place of business in New Jersey. The subsidiary distributed vehicles manufactured by Daimler throughout the United States, including California. Unlike here, California had no connection to the atrocities, the perpetrators of the atrocities, or the victims. The Argentinian

MICHAEL PLOCKI LAW GROUP
1108 Fifth Avenue, Suite 200
San Rafael, CA 94901

1
2
3
4

plaintiffs invoked general jurisdiction. The federal district court dismissed for lack of general personal jurisdiction. Initially, the Ninth Circuit Court of Appeals affirmed. It subsequently reconsidered and reversed, holding that Daimler had continuous and systematic contacts with California and that the exercise of personal jurisdiction would be fair and reasonable.

5

*State ex rel. Ford Motor Company, supra,* at 15.

6

7

8

Ford erroneously interprets *Daimler's* holding to mean that general jurisdiction over a corporation can only exist where it is incorporated or has its principal place of business.  See Ford's Motion 4:14-17 & 7:18-22.

9

10

11

12

13

However, Ford's analysis of *Daimler* omits critical portions of the Supreme Court's opinion. Contrary to Ford's arguments, *Daimler* **did not hold that** the "place of incorporation and principal place of business" **are the only bases for jurisdiction**. *Daimler, supra*,134 S.Ct. at 769. (emphasis added)

14

15

16

17

18

The Supreme Court explained that "the inquiry under *Goodyear* is... whether that corporation's affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* at 761.  This was the exact legal standard that existed when the Goodyear decision was decided and it remains the legal standard today.

19

20

21

22

*International Shoe* recognized that general jurisdiction exists where a foreign corporation's "continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on a cause of action arising from dealings distinct from those activities." *International Shoe, supra*, 326 U.S. at 318.

23

24

25

26

27

28

Throughout its motion, Ford suggests that *Daimler* created a bright line test concluding that there is only one-at the most two-jurisdictions where a defendant can be deemed to be "at home" and subject to general jurisdiction. *See* Ford's Motion 7:18-22. ("[Delaware and Michigan] are the only states in which [Ford] is subject to general personal jurisdiction.") This is incorrect.  Ford's interpretation, if accepted by this Court, would only serve to place severe

MICHAEL PLOCKI LAW GROUP
1108 Fifth Avenue, Suite 200
San Rafael, CA 94901

1  limits on a state's sovereign right over its courts' ability to hold responsible a defendant who

2  committed tortious acts within its boundaries.

3      Not only would adopting Ford's interpretation of *Daimler* impede a state's sovereignty

4  over its courts' jurisdiction, it would create a gross injustice that would allow bigger,

5  multinational corporations to evade general jurisdiction while forcing smaller corporations

6  located within a state to always be subject to that forum's general jurisdiction – an imbalance

7  that would not only defeat the traditional notions of fair play and justice, but would create a

8  benefit to large corporate wrongdoers at the expense of those the corporation has injured.

9  

10      Rather, *Daimler* held that the relevant inquiry for general jurisdiction does not end at

11 whether the foreign corporation is incorporated in the forum state or if it has a principal place of

12 business in the state, but that the analysis continues on to determine whether the foreign

13 corporation has affiliations with the forum that are so continuous and systematic that it is still

14 considered at home in the forum. Further, *Daimler* did not create or institute a bright line test in

15 determining where a corporate defendant is deemed to be "at home" - instead, *Daimler* provided

16 factors a court may apply in determining whether a forum can exercise general jurisdiction over

17 a corporate defendant; specifically: the state of incorporation of the corporate defendant; the

18 location of the corporate defendant's principal place of business; and whether the corporate

19 defendant has "continuous and systematic" affiliations with the forum state.

20 

21 

22      **2.  Ford's Affiliations With California Are So Substantial And Of Such A**
         **Nature As To Render It "At Home" In California**

23 

24      Ford has substantial contacts within the State of California.  It is indisputable that since

25 1920, Ford has been registered with the California Secretary of State to conduct business with

26 the California Secretary and has regularly conducted business in the State of California since that

27 time.  Plocki Decl., Exh. A, ¶ 2.  Ford owns and/or occupies various offices throughout

28 

MICHAEL PLOCKI LAW GROUP
1108 Fifth Avenue, Suite 200
San Rafael, CA 94901

MICHAEL PLOCKI LAW GROUP
1108 Fifth Avenue, Suite 200
San Rafael, CA 94901

California, including in Irvine, California.  The Irvine, California location is considered Ford's regional headquarters and is a two-story office building and design center located at 3 Glenn Bell Way.  According to a Los Angeles Times article from February 25, 2000, Ford Motor Co. announced that it was moving the U.S. headquarters of its foreign and domestic luxury lines to Irvine, creating 225 jobs and cementing Orange County as the hub of Southern California's burgeoning automotive industry.  Plocki Decl., Exh. B, ¶ 3.  Ford owns and/or occupies various businesses and offices throughout California, including in Palo Alto, California.  The Palo Alto, California location is the home of Ford's Research & Innovation Center, which is a 25,000 square foot facility and is located at 3200 Hillview Avenue. According to Ford Motor Company, it is one of the largest automotive manufacturer research centers in the region, and employs more than 130 researchers, engineers and scientists.  Plocki Decl., Exh. C, ¶ 4.  Ford actively solicits employees for jobs in California, including at its Palo Alto, California Research & Innovation Center.  Plocki Decl., Exh. D, ¶ 5.  Ford owns and/or occupies various offices in Sacramento, California, which is located in the state capital at 925 L Street and is where Ford's California lobbyist is Melanie Weigner lobbies the state of California on Ford's behalf.  Plocki Decl., Exh. E, ¶ 6.  Ford previously operated large assembly plants in California, including Richmond and Long Beach, California.  Plocki Decl., Exh. F, ¶ 7.  Due to the impact and influence Ford had on the state of California, California named a city after Ford called "Ford City, California."  Plocki Decl., Exh. G, ¶ 8.  Ford recently acquired San Francisco, California based Chariot, a bike-sharing and commuter shuttle-service company, which operates 28 routes in San Francisco and provides thousands of rides each day.  Ford's CEO Mark Fields announced that "[Ford] wants to change the way the world moves."  Plocki Decl., Exh. H, ¶ 9.  Ford recently announced that it is investing in and developing fully autonomous vehicles at its Palo Alto, California, Silicon Valley campus, more than doubling its work force there.  Plocki Decl., Exh. I, ¶ 10.  Ford currently has

one-hundred and eighty-two (182) dealerships in the State of California, which are duly

authorized agents of Ford Motor Company and which service, solicit and sell Ford vehicles to

California residents.  Plocki Decl., ¶ 11.  Ford actively markets its vehicles for sale in the State of

California, including by use of print, radio, television, and other form of advertising for the

specific purpose of targeting customers in California.  Plocki Decl., ¶ 11.  Ford sold over

200,000 new cars and trucks in California in 2015, and nearly 200,000 in 2014, and Ford is the

number one seller of pick-up trucks, sporty compact vehicles, and mid-size SUVs in California.

Plocki Decl., Exh. J, ¶¶ 13-14.  (*Id.*)  Galpin Ford of North Hills, California, was named the

number one volume Ford dealer in the world for a record 25th consecutive year.  Plocki Decl.,

Exh. K, ¶ 15.  Ford recently invested $1 million in education and community programs in

California.  Plocki Decl., Exh. L, ¶ 16.  Ford was fined $2.96 million by the California Air

Resources Board for violations of air quality laws related to the sale of vehicles with non-

compliant On-Board Diagnostic systems in California.  Plocki Decl., Exh. M, ¶ 17.  The Ford

Motor Credit Company, LLC, regarded as the financial services arm of Ford and a wholly owned

subsidiary of Ford, has conducted business in California since 2007.  Plocki Decl., Exh. N, ¶ 18.

Ford has litigated numerous cases in California without asserting any objection to the Court's

jurisdiction.  Plocki Decl., Exh. O, ¶ 19.  Ford maintains indemnity agreements with its

dealerships wherein Ford agrees to indemnify its dealerships and provide a defense in litigation.

Plocki Decl., ¶ 20.

    Despite these extensive and significant contacts, Ford still contends that such contacts

are insufficient to warrant jurisdiction in California.  Ford's assertions  that its contacts with

California is contrary to the law and facts.

    Contrary to Ford's arguments, Ford has availed itself of the laws of California in such a

sustained manner that it is clearly subject to jurisdiction in the State of California. *Daimler* does

MICHAEL PLOCKI LAW GROUP
1108 Fifth Avenue, Suite 200
San Rafael, CA 94901

1   not change this conclusion.  Daimler did not, overrule *International Shoe*.

2           Ford's reliance on *Goodyear* is also misplaced. *Goodyear* is distinguishable from this

3   case .  In *Goodyear,* the foreign defendant had absolutely no contacts with North Carolina, the

4   forum state. Specifically, the *Goodyear* defendant did not sell products in North Carolina, did

5   not advertise its products in North Carolina, it did not solicit business in North Carolina, it did

6   not ship products to North Carolina, and the product at issue was not distributed in North

7   Carolina. *Id*. at 2852. Simply put, the *Goodyear* defendant never "took any affirmative action to

8   cause tires which they had manufactured to be shipped to North Carolina." *Id*.

9           Unlike in the defendants in *Goodyear*, Ford is qualified, licensed, and authorized to do

10  business in California; it maintains numerous offices throughout California; it has employees

11  working for it in California and actively solicits new employees to its facilities in California; it

12  has an agent for service of process in California; it advertises in California; it operates sales

13  and service networks in California; it owns and/or occupies real estate in California; it lobbies

14  its various interests in California; it invests in California schools and businesses; and it even

15  litigates in California.  (Plocki Decl., ¶¶ 2-20.)   As an ongoing business employing California

16  residents, earning profits from its sales of cars and trucks in California, and leasing and/or

17  owning property in California, Ford's payment of California taxes is reasonably inferred. (See

18  *Goodyear*, *supra*, 131 S.Ct. at p. 2852.)  Considering these factors, which Ford does not deny,

19  Ford is "at home" in California and should be subjected to its jurisdiction.

20          Other jurisdictions have recently held that Ford is "at home" in states other than

21  Michigan and Delaware and is therefore subject to their state's jurisdiction.  In a recent Illinois

22  circuit court case, entitled *Irene Jeffs v. Anco Insulations, et al.*, the circuit court there held that

23  Illinois has jurisdiction over Ford because Ford was certified to do conduct business in Illinois,

24  and had regularly conducted business in Illinois since 1922; owned real property in Illinois; had

MICHAEL PLOCKI LAW GROUP
1108 Fifth Avenue, Suite 200
San Rafael, CA 94901

- 14 -

authorized dealers, which sold over 100,000 Ford vehicles to Illinois residents in the past year; employed citizens of Illinois; litigated numerous cases in Illinois without asserting any objection to personal jurisdiction; invested in the state; and even had a city named after it, Ford Heights, Illinois. Considering all of the above, which nearly mirrors the facts in the present case, the court ruled that it had jurisdiction over Ford. *Irene Jeffs v. Anco Insulations, et al.*, In the Circuit Court for the Third Judicial Circuit, Madison County, Illinois, Case No. 15-L-533 (2015), attached as Exhibit 3 to the accompanying Notice of Lodging Non-California Slip Opinions.

In a recent Colorado product liability action entitled *John Magill v. Ford Motor Company, et al.*, the Colorado State District Court, for the City and County of Denver, denied Ford's motion to dismiss for lack of personal jurisdiction and held that the Court's exercise of general jurisdiction over Ford was consistent with the Due Process Clause of the United States Constitution. *John Magill, et al., v. Ford Motor Company, et al.,* District Court, City and County of Denver, Colorado, Case No. 2015CV32019 (2015). Attached as Exhibit 2 to the accompanying Notice of Lodging Non-California Slip Opinions.

**B. FORD'S CALIFORNIA ACTIVITIES ARE SUBSTANTIALLY CONNECTED TO PLAINTIFF'S CLAIMS TO SUPPORT SPECIFIC JURISDICTION**

The California Supreme Court recently held in *Bristol-Myers Squibb Company v. Superior Court*, --- P.3d ---- (2016), WL 4506107, that the defendant Bristol-Myers Squibb Company, a corporation, which is neither incorporated nor headquartered in California, is subject to personal jurisdiction of the California courts on the basis of specific jurisdiction. Ford's motion does not address this case.

Bristol-Myers is a pharmaceutical manufacturer of a drug called Plavix. Bristol-Myers conducts significant business and research activities in California but is neither incorporated nor headquartered here. Instead, Bristol-Myers is headquartered in New York City and incorporated

MICHAEL PLOCKI LAW GROUP
1108 Fifth Avenue, Suite 200
San Rafael, CA 94901

in Delaware.  In March 2012, eight separate amended complaints were filed in San Francisco Superior Court by or on behalf of 678 individuals, consisting of 86 California residents and 592 nonresidents, all of whom allegedly were prescribed and ingested Plavix, a drug created and marketed by Bristol-Myers, and as a result suffered adverse consequences.

In so holding, the California Supreme Court ruled that Bristol-Myers' California-related activities are sufficiently related to the nonresident plaintiffs' suits.  Unlike the present case, however, Bristol-Myers did not contest the court's exercise of jurisdiction over the California-resident plaintiffs.

It is well settled that in ascertaining the existence of specific jurisdiction, courts must analyze the "relationship among the defendant, the forum, and the litigation." *Bristol-Myers Squibb Company supra*, at 9, quoting *Helicopteros*, *supra*, 466 U.S. at 414.  According to the California Supreme Court, whether a court may exercise specific jurisdiction over a nonresident defendant, depends on the following three factors:

> …(1) whether the defendant has purposefully directed its activities at the forum state; (2) whether the plaintiff's claims arise out of or are related to these forum-directed activities; and (3) whether the exercise of jurisdiction is reasonable and does not offend traditional notions of fair play and substantial justice…[A] plaintiff has the initial burden of demonstrating facts to support the first two factors, which establish the requisite minimum contacts with the forum state. The burden then shifts to the defendant to show that the exercise of jurisdiction would be unreasonable under the third factor… **[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.**

*Bristol-Myers Squibb Company, supra* at 9. (emphasis added)

The California Supreme Court went on to further explain that in California:

> **…the relatedness requirement for specific jurisdiction is determined under the substantial connection test, which is satisfied if there is a substantial nexus or connection between the defendant's forum activities and the plaintiff's claim.** This

test requires courts to evaluate the nature of the defendant's activities in the forum and the relationship of the claim to those activities in order to answer the ultimate question under the due process clause: whether the exercise of jurisdiction in the forum is fair. Under the substantial connection test, the intensity of forum contacts and the connection of the claim to those contacts are inversely related…The more wide ranging the defendant's forum contacts, the more readily is shown a connection between the forum contacts and the claim…Thus, a claim need not arise directly from the defendant's forum contacts in order to be sufficiently related to the contact to warrant the exercise of specific jurisdiction... Indeed, only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that [contact]… Finally, **the defendant's activities in the forum state need not be either the proximate cause or the but for cause of the plaintiff's injuries**.

*Id. at* 9. (emphasis added)

## 1. Purposeful Availment

As the California Supreme Court explained in *Bristol-Myers Squibb Company, supra*, "[t]he Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Id.* at 9.  However, a forum state can assert specific jurisdiction over a nonresident defendant where the defendant "has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* at 9-10, quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

"When a [nonresident defendant] purposefully avails itself of the privilege of conducting activities within the forum State, it has clear notice that it is subject to suit there..." *Bristol-Myers Squibb Company, supra,* at 10 (quoting *World–Wide Volkswagen Corp. v. Woodson* 444 U.S. 286, 297 (1980), internal citations omitted.)

Here, it is undeniable that Ford has purposely availed itself of the privilege of conducting business activities in California, invoking the benefits and protection of its laws, and Ford does

MICHAEL PLOCKI LAW GROUP
1108 Fifth Avenue, Suite 200
San Rafael, CA 94901

not contend otherwise.

    (1) Ford markets and advertises its cars and trucks, as well as other products, in this state;

    (2) Ford employs researchers, engineers, scientists, and salespersons in California;

    (3) Ford owns and/or occupies several businesses and offices throughout California;

    (4) Ford employs numerous California citizens in California;

    (5) Ford actively and purposefully seeks to promote sales of its cars and trucks, and other products, to California residents, resulting in the sale of approximately 200,000 cars and trucks annually in the state of California;

    (6) Ford is the number one seller of pick-up trucks, sporty compact vehicles, and mid-size SUVs in California;

    (7) Ford purchases and invests in California businesses;

    (8) Ford operates research and development laboratory facilities in California;

    (9) Ford employs a lobbyist to lobby the state on the company's behalf; and

    (10) Ford maintains a large physical presence in California having 182 Ford dealerships, and its own credit services company called Ford Motor Credit Company, LLC.

Plocki Decl., ¶¶ 2-20.

**2.  Arises From Or Is Related To**

The California Supreme Court in *Bristol-Myers Squibb Company* held that

> [F]or the purpose of establishing jurisdiction the intensity of forum contacts and the connection of the claim to those contacts are inversely related…[T]he more wide ranging the defendant's forum contacts, the more readily is shown a connection between the forum contacts and the claim…Thus, a claim need not arise directly from the defendant's forum contacts in order to be sufficiently related to the contact to warrant the exercise of specific jurisdiction.  Rather, as long as the claim bears a substantial connection to the nonresident's forum contacts, the exercise of specific jurisdiction is appropriate. **The due process clause is concerned with protecting nonresident defendants from being**

MICHAEL PLOCKI LAW GROUP
1108 Fifth Avenue, Suite 200
San Rafael, CA 94901

MICHAEL PLOCKI LAW GROUP
1108 Fifth Avenue, Suite 200
San Rafael, CA 94901

> **brought unfairly into court in the forum, on the basis of random contacts. That constitutional provision, however, does not provide defendants with a shield against jurisdiction when the defendant purposefully has availed himself or herself of benefits in the forum.**

*Bristol-Myers Squibb Company, supra,* at 11, quoting *Vons*, *supra*, 14 Cal.4th at 452 (emphasis added).

In this case, Plaintiff alleges that Ford defectively designed and manufactured the Ford truck, as well as the component parts associated with said truck, and that Plaintiff suffered catastrophic injuries as a result. Plaintiff alleges that Ford defectively designed and manufactured the Ford truck at issue, as well as the component parts associated with said truck, and that Plaintiff was injured as a result. Plaintiff's claims arise from Ford's purposeful contacts with this state. Thus, the Plaintiff's claims bear a substantial connection to Ford's contacts in California. Ford's nationwide marketing, promotion, and distribution of cars and trucks created a substantial nexus between Plaintiff's claims and the company's contacts in California concerning Ford trucks.

In sum, taking into account all of Ford's activities in this state and Ford's relation to the causes of action at issue here, it would be consistent with due process for Ford to be subject to litigation in this state concerning the injuries caused by the Ford truck. Not only does Ford purposefully avail itself of the benefits of California by its extensive marketing and distribution of its cars and trucks in this state and by employing hundreds of California-based dealers and salespersons, resulting in its substantial sales of cars and trucks here, but also Ford maintains significant research and development facilities in California, owns and/or occupies real estate in California, lobbies its various interests in California, invests in California schools and businesses, and actively litigates in California without objection to California jurisdiction. (Plocki Decl., ¶¶ 2-20.)

As such, all of Plaintiff's claims either arose from these activities or are related to those activities.

### 3.   The Reasonableness Of Specific Jurisdiction

"After a plaintiff meets the burden of showing that a defendant has purposefully established minimum contacts with the forum state, the burden then shifts to the defendant to show that the assertion of specific jurisdiction is unreasonable because it does not comport with traditional notions of fair play and substantial justice." *Bristol-Myers Squibb Company, supra,* p. 15.

Although Ford does not argue that the assertion of personal jurisdiction over Ford in this case would be fundamentally unfair, such argument would be unconvincing nonetheless. California courts have long held that it is fair to exercise jurisdiction over a foreign defendant, even where litigating the case in California presents burdens. E.g. *Vons, supra*, 14 Cal 4th at 477.

In *Vons*, for example, the California Supreme Court held that the out-of-state defendants failed to demonstrate that personal jurisdiction in California was unreasonable.   The defendants had argued that many of their witnesses were not in California, and that a significant amount of evidence was not in California, and the conduct at issue occurred outside of California. (*Id.* at 476)  Rejecting Defendants' arguments, the California Supreme Court reasoned that it had an interest in protecting Vons, against an out-of-state tortfeasor. *Id.* at 477.

In determining whether the defendant has established that the exercise of specific jurisdiction is unreasonable, the court "must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi*, *supra*, 480 U.S. at 113.

In *Asahi*, the Supreme Court concluded that the interests of the Taiwanese manufacturer and California were slight, for several reasons: the dispute involved only an indemnity claim

MICHAEL PLOCKI LAW GROUP
1108 Fifth Avenue, Suite 200
San Rafael, CA 94901

MICHAEL PLOCKI LAW GROUP
1108 Fifth Avenue, Suite 200
San Rafael, CA 94901

1  between two foreign parties based on a transaction that took place in Taiwan; it would not be

2  more convenient to litigate in California; California's interests were considerably diminished

3  because the cross-complainant was not a California resident; and the state's interest in enforcing

4  its safety standards was not at issue because the dispute concerned primarily indemnification and

5  California law did not necessarily apply.  *Id*. at 115  The Court found that "[c]onsidering the

6  international context, the heavy burden on the alien defendant, and the slight interests of the

7  plaintiff and the forum State, the exercise of personal jurisdiction by a California court over

8  Asahi in this instance would be unreasonable and unfair." *Id*.at 116.  Simply put, *Asahi* and its

9  progeny are not analogous to this case.  Here, Ford is not randomly or incidentally connected

10  to California, as was the case in *Asahi*.  Rather, Ford maintains an agent for service in

11  California; sells hundreds of thousands of cars and trucks in the state, presumably earning

12  millions of dollars from such sales; employs a robust labor force in California; occupies

13  multiple buildings throughout the State; and actively litigates numerous cases within

14  California.  Any argument that asserting jurisdiction over Ford in California would violate

15  basic principles of fair play and substantial justice is simply not credible.

16        Furthermore, California has a legitimate interest in allowing its citizens to have their

17  claims heard here as well as deterring improper conduct occurring within its borders. *Hurtado

18  v. Superior Court,* 11 Ca1.3d 574, 583-584 (1974).  As noted above, the Ford truck's defect

19  manifested in California and the accident occurred here.

20        Plaintiff is entitled to have his case adjudicated in a timely and just manner.  As such, a

21  transfer of this case would cause further undue delay, and require that Plaintiff bear the burden of

22  engaging in general liability discovery, duplicative discovery, thereby losing the efficiencies of

23  coordinated actions. *Bridgestone Corp. v. Superior Court*, 99 Cal.App.4th 767, 779 (2002).

24        There is little doubt therefore that the interests of fairness and judicial efficiency would

- 21 -

1  not be served if Plaintiff was required to have his case heard in two separate forums on nearly

2  opposite ends of the county.  See *Bridgestone Corp., supra*, 99 Cal.App.4th at 779: "Judicial

3  efficiency is best served by litigating all claims in a single forum."

4          As such, specific jurisdiction over Ford is reasonable.

5

6  **C.  FORD'S MOTION IS INCHOATE BECAUSE PLAINTIFF HAS NOT YET HAD**
   **AN OPPORTUNITY TO CONDUCT JURISDICTIONAL DISCOVERY**

7

8          Currently, no discovery has been yet propounded in this matter.  Indeed, until the Rule

9  26(f) conference is held and a record is made as to the universe of facts relevant to the issue of

10  personal jurisdiction, the existence nature and scope of Ford's overall contacts with the forum

11  state present factual questions, which cannot be resolved solely on the basis of Ford's bare

12  assertions.  Publicly available information indicates that Ford in fact has substantial contacts in

13  California beyond selling cars and trucks.  Without having had jurisdictional discovery, Ford's

14  motion is inchoate.

15

16          California courts have consistently held that before dismissal of a defendant for lack of

17  personal jurisdiction, plaintiffs must be afforded an opportunity to conduct discovery on the

18  subject.  See, e.g., *Goehring v. Super. Ct. of San Diego Courty* 62 Cal.App.4th 894, 911 (1998)

19  ["A plaintiff is generally entitled to conduct discovery with regard to a jurisdictional issue before

20  a court rules on a motion to quash."]; *Magnecomp Corp. v. Athene Co.,* 209 Cal.App.3d 526, 533

21  (1989) [a plaintiff has right to conduct discovery to develop facts needed to sustain its burden on

22  issues of personal jurisdiction]; *Mihlon v. Super. Ct. of Los Angeles County*, 169 Cal.App.3d

23  703. 710 (1985) ["The plaintiff has the right to conduct discovery with regard to the issue of

24  jurisdiction to develop the facts necessary to sustain this burden."]

25

26          Similar to the instant case, the West Virginia Supreme Court recently held that the

27  wrongful death Plaintiff in a product liability action, who was faced with opposing nonresident

28

MICHAEL PLOCKI LAW GROUP
1108 Fifth Avenue, Suite 200
San Rafael, CA 94901

MICHAEL PLOCKI LAW GROUP
1108 Fifth Avenue, Suite 200
San Rafael, CA 94901

defendant Ford's motion to dismiss for lack of personal jurisdiction, was permitted to conduct

jurisdictional discovery against Ford.  *State ex rel. Ford Motor Company, supra.*

 Moreover, a trial court may "continue a motion to [dismiss] in order to allow the Plaintiff

time to conduct discovery on the issues raised by the motion."  *HealthMarkets, Inc. v. Sup. Ct.*,

l7l Cal.App.4th 1160, I173 (2009).

 By utilizing publicly available information, Plaintiff has established that Ford has broad

and extensive contacts with California. Plaintiff believes there are many more connections and

activities by Ford in California which relate to Plaintiff's claims, and Plaintiff is confident

discovery will further support the exercise of personal jurisdiction over Ford.

 There are important factual issues with regard to the Ford truck and Ford's California-

related activities.  For example, Ford does not state how the Ford truck entered California be it

through Ford or a Ford-authorized dealership.  See Ford's Motion 2:13-25.  Nor is there any

evidence submitted by Ford that Ford was uninvolved in the design, installation, or sale of the

aforementioned lift gate.  See Ford's Motion 2:13-25.  Furthermore, while Ford claims that its

"Ford Sales and Service Agreement," allegedly entered into between Ford and each Ford

California-based dealer, somehow "disavows" Ford from California-based contacts or

exonerates Ford from product liability actions, notably missing from Ford's Motion is any such

dealer agreement for the Court's consideration.  See Ford's Motion 2:13-25, 9:21-23.

 Plaintiff has made a prima facie case for personal jurisdiction. Just on the facts presented

here, Plaintiff is comfortable asserting that Ford's motion should be denied with prejudice.  Even

if Plaintiff had not presented such facts, then Plaintiff should have leave to conduct jurisdictional

discovery.

//

//

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MICHAEL PLOCKI LAW GROUP
1108 Fifth Avenue, Suite 200
San Rafael, CA 94901

**V.**

**CONCLUSION**

For the foregoing reasons, Plaintiff requests this Court deny Ford's motion to dismiss for lack of personal jurisdiction, or in the alternative, permit Plaintiff to conduct jurisdictional discovery.

Dated:  September 20, 2016              LAW OFFICES OF JOHN R. BOBAY
                                        MICHAEL PLOCKI LAW GROUP
                                        Attorneys for Plaintiff
                                        MICHAEL SULLIVAN

                                                  /s/ Michael J. Plocki
                          By:       _____
                                        MICHAEL J. PLOCKI

MP&A iso OPPOSITION TO FORD'S MOTION TO DISMISS