1  RANDALL D. HAIMOVICI (SBN: 213635)
   rhaimovici@shb.com
2  AMIR NASSIHI (SBN: 235936)
   anassihi@shb.com
3  JOAN R. CAMAGONG (SBN: 288217)
   jcamagong@shb.com
4  SHOOK, HARDY & BACON L.L.P.
   One Montgomery, Suite 2700
5  San Francisco, California 94104-2828
   Telephone:    (415) 544-1900
6  Facsimile:    (415) 391-0281

7  *Attorneys for Defendant*
   FORD MOTOR COMPANY
8

9                     UNITED STATES DISTRICT COURT

10                   NORTHERN DISTRICT OF CALIFORNIA

11                        SAN FRANCISCO DIVISION

12 | MICHAEL SULLIVAN,                               | Case No. 3:16-cv-03505-JST
13 |         Plaintiff,                              | **REPLY IN SUPPORT OF DEFENDANT FORD MOTOR COMPANY'S MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(2); MEMORANDUM OF POINTS AND AUTHORITIES**
14 |         v.                                     |
15 | FORD MOTOR COMPANY; THIEMAN                    |
   | TAILGATES, INC.; and DOES ONE through           |
16 | FIFTY, Inclusive,                               |
17 |         Defendants.                             | Date:     November 3, 2016
                                                      Time:     2:00 p.m.
18                                                    Location: Courtroom 9 – 19th Floor
                                                      Judge:    Jon S. Tigar
19
                                                      First Amended Complaint Filed: July 29, 2016

**INTRODUCTION**

Despite Plaintiff's attempts to downplay the Supreme Court's recent rulings, there is no question that it has substantially tightened the requirements for general jurisdiction. *Daimler AG v. Bauman*, 134 S.Ct. 746 (2014)(hereinafter "*Bauman*") clarified that it is not enough to show that a corporation has contacts with a forum state to subject it to general jurisdiction. Under *Bauman*, the only two places Ford is certain to be subject to general jurisdiction are Delaware and Michigan. In all other circumstances, it is Plaintiff's burden to show that this is an exceptional case justifying application of general jurisdiction. This is a sea-change from prior case law, which failed to privilege these two locations as the paradigmatic, and perhaps only, appropriate fora for the assertion of general jurisdiction. Nevertheless, Plaintiff argues as if the antiquated doctrines *Bauman* grappled with and rejected were still relevant. After *Bauman*, the existence of contacts with a forum state, even continuous and systematic ones, are no longer sufficient to impose general jurisdiction, if they ever were. Simply put, Plaintiff cannot show that Ford is "at home" in California, and therefore cannot show that general jurisdiction is appropriate.

With regard to specific jurisdiction, Plaintiff does not engage with, much less make any effort to distinguish, a single case cited in Ford's motion. Instead, Plaintiff relies almost entirely on the recent California Supreme Court case *Bristol-Myers Squibb Company v. Superior Court,* 377 P.3d 874 (Cal. 2016)(hereinafter "*Bristol-Myers*") to justify his claim that specific jurisdiction is appropriate in this case. However, *Bristol-Myers* is not binding on this Court and is contrary to established Ninth Circuit precedent. The much more restrictive but-for test from the Ninth Circuit controls and Plaintiff cannot satisfy it.

Finally, Plaintiff offers nothing more than speculation in support of jurisdictional discovery. Plaintiff fails to establish a connection between any claim asserted in this case and any action by Ford in California so as justify jurisdictional discovery in this matter.

Accordingly, the Court should grant Ford's motion and dismiss Plaintiff's First Amended Complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

# ARGUMENT

**I.     Under *Bauman* Ford Cannot Be Considered "At Home" in California.**

**1.     *Bauman* Clarified what Circumstances are Necessary for Imposition of General Jurisdiction**

Plaintiff does not and cannot contest that Ford is not incorporated in, and does not have its principal place of business in California. Nor does he contest that these are the paradigm bases for general jurisdiction. *Bauman, supra,* 134 S.Ct at 760. Without either of these, general jurisdiction is much more difficult to justify, and is limited to "exceptional case[s]." *Id.* at 761, n. 19; *see also Google Inc. v. Eolas Technologies Inc.*, Case No. 15-cv-05446-JST, 2016 WL 3346529 at *3 (N.D. Cal. June 16, 2016) (general jurisdiction "is generally only satisfied by the defendant having been incorporated in the forum state, or maintaining its principal place of business there.").

Despite Plaintiff's assertions to the contrary, *Bauman* did not merely restate existing law. Under *Goodyear*, the Supreme Court held that the "paradigm forum for the exercise of general jurisdiction…for a corporation," is a place equivalent to the individual's domicile, somewhere "the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown* 564 U.S. 915, 924 (2011) (hereinafter "*Goodyear*"). In *Bauman* the court clarified this pronouncement, stating that though "*Goodyear* did not hold that a corporation may be subject to general jurisdiction only in a forum where it is incorporated or has its principal place of business," it did "type[] those places paradigm all-purpose forums." *Bauman, supra,* 134 S.Ct at 760. It concluded that looking beyond those paradigmatic exemplars to "approve the exercise of general jurisdiction in every State in which a corporation engages in a substantial, continuous, and systematic course of business…is unacceptably grasping." *Bauman, supra,* 134 S.Ct at 761. The court did "not foreclose the *possibility* that in an *exceptional* case," a corporation might be subject to general jurisdiction elsewhere, but *Bauman* makes clear that such a finding ought to be exceedingly rare. *Id.* at 761, n. 19 (emphasis added).

Though the test for general jurisdiction has not changed since *Goodyear*, it is disingenuous to claim that *Bauman* did not alter the legal landscape for assertions of general jurisdiction. As the Seventh Circuit recognized, *Bauman* "has clarified and, it is fair to say, raised the bar for this type of

1  jurisdiction." *Kipp v. Ski Enter. Corp. of Wis. Inc.*, 783 F.3d 695, 697 (7th Cir. 2015). *Bauman*
2  narrowed what is sufficient to qualify for general jurisdiction under the test outlined in *Goodyear*.
3  More than that, it privileged two particular circumstances above all others, and all but held that
4  imposition of general jurisdiction under other circumstances would almost always be inappropriate.

5      Given the high bar *Bauman* set for demonstrating that general jurisdiction is appropriate
6  where a corporation has neither its principal place of business nor its place of incorporation in a
7  forum state, Plaintiff must demonstrate exceptional facts justifying imposition of general jurisdiction
8  in this case. The Supreme Court in *Bauman* made clear that it is not enough to show that a
9  corporation has regular business dealing in or with the forum state. "[T]he inquiry…is not whether a
10 foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,'
11 it is whether that corporation's 'affiliations with the State are so "continuous and systematic" *as to*
12 *render [it] essentially at home* in the forum State." *Bauman, supra,* 134 S.Ct at 761 (emphasis
13 added). This inquiry requires "an appraisal of a corporation's activities in their entirety, nationwide
14 and worldwide." *Id.* at 762, n. 20.  "A corporation that operates in many places can scarcely be
15 deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business'
16 tests framed before specific jurisdiction evolved in the United States." *Id.* It is not enough that the
17 corporation conducts some activity, or even a great deal of activity, in the forum state. "Nothing in
18 *International Shoe* and its progeny suggests that 'a particular quantum of local activity' should give
19 a State authority over a 'far larger quantum of ... activity' having no connection to any in-state
20 activity." *Bauman, supra,* 134 S.Ct at 762 at n. 20.

21     In *Bauman*, the court considered whether a corporation using a subsidiary to market, sell and
22 distribute vehicles in California was enough to subject it to general jurisdiction in California. The
23 court rejected this proposition, stating "[i]f [Defendant]'s California activities sufficed to allow
24 adjudication of this…case in California, the same global reach would presumably be available in
25 every other State in which [Defendant's subsidiary]'s sales are sizable." *Bauman, supra,* 134 S.Ct at
26 761. The court concluded that "[s]uch exorbitant exercises of all-purpose jurisdiction would
27 scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum
28 assurance as to where that conduct will and will not render them liable to suit.'" *Id.* at 761-762

(quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Thus, even with its subsidiary's contacts with California attributed to it, the court determined that the parent was not subject to general jurisdiction in California. *Id.*

In the same vein, the court rejected theories that maintaining agents in a state was sufficient to show that the corporate entity was at home there. As the court stated "Agency relationships…may be relevant to the existence of specific jurisdiction," but "[i]t does not inevitably follow, however, that similar reasoning applies to general jurisdiction." *Id.* at 759, n. 13.

### 2. Plaintiff Cannot Demonstrate that Ford's Contacts with California are Sufficient to Render it Subject to General Jurisdiction

Less than one year ago, this Court held that Ford is not subject to general jurisdiction in California. *Cahen v. Toyota Motor Corp.*, 147 F.Supp.3d 955 (N.D. Cal. 2015). Notably, Plaintiff cites to *Cahen* as the legal standard for personal jurisdiction but makes no effort to distinguish it. Opp. To Motion to Dismiss, p. 7. In that case, like here, plaintiffs pointed to Ford's new vehicle sales in California, an internet screen shot purporting to show that Ford operates a research center in California, Ford's solicitation of employees for jobs in California and a prior Ford assembly plant in California. *Cahen*, 147 F.Supp.3d at 963. Despite these assertions, however, this Court held such contacts insufficient to render Ford "at home" in California. *Id.* at 963-965 (citing *Xilinx, Inc. v. Papst Licensing GMBH & Co. KG*, 113 F.Supp.3d 1027, 1036 (N.D. Cal. 2015)("Merely conducting business in California from a home base in Germany is not 'exceptional,' even when such business generates substantial revenue.").

As this Court found in *Cahen*, none of Ford's contacts with California are nearly as significant as those already considered in *Bauman*. *Cahen*, 147 F.Supp.3d at 964 (noting that the contacts in *Bauman* "surpass the type of [Ford] contacts at issue here."). Yet, similar to the *Cahen* plaintiffs, Plaintiff here points to a number of alleged business interests Ford maintains in California, including research and development facilities, regional headquarters facilities, dealerships, other companies Ford has acquired, and the fact that Ford used to operate assembly plants in California. Opp. To Motion to Dismiss, pp. 3-5. Plaintiff also attempts to argue that Ford's sales of vehicles in this forum would subject it to general jurisdiction. Opp. To Motion to Dismiss, pp. 12-13.

1  Consistent with *Cahen*, and a number of federal courts across the country, none of these
2  taken alone or together render Ford at home.  *See* Ford's Opening Brief at 6-8 (discussing cases
3  across the country where courts held general jurisdiction is improper as to Ford).  Given Ford's
4  worldwide business, it is not enough to argue that Ford maintains a presence or has significant sales
5  in California.  Indeed, the *Bauman* court explicitly rejected the latter premise for general jurisdiction.
6  Under *Bauman* these sorts of contacts are "*no longer enough*…at the very least [] the defendant
7  [must] have systematic and continuous contacts…that *set*[] *the forum apart* from the other states
8  where defendant may conduct business—contacts that *render the forum in some manner equivalent*
9  *to a principal place of business*."  *Presby Patent Trust v. Infiltrator Sys., Inc.* Civil No. 14-cv-542-
10 JL, 2015 WL 3506517, at *4 (D.N.H. June 3, 2015) (emphasis added).
11  Post-*Bauman* cases involving Ford make it clear that even a substantial volume of operations
12  in a state are insufficient to approximate physical presence, particularly when considered in the
13  context of Ford's overall business.  *See, e.g. Pitts v. Ford Motor Co*., 127 F.Supp.3d 676, 683 (S.D.
14  Miss. 2015) ("The contacts that Plaintiffs have identified Ford as having with Mississippi
15  demonstrate that Ford is at most 'doing business' in Mississippi, and those contacts do not reveal
16  activities that are so 'continuous and systematic' as to render Ford 'at home' in Mississippi.");
17  *Oversen v. Kelle's Transp. Serv., Inc*., No. 2:15-cv-535-JNP, at 5 (D. Utah May 12, 2016) (attached
18  as Exhibit B to Camagong Decl. in Support of Motion) (holding that although Ford may have
19  "extensive" contacts with Utah, "the same can be said of Ford's operations in every state across the
20  country" – which means Ford could not be "at home" in the state.); *Erwin v. Ford*, No. 8:16-cv-
21  01322-T-21-AEP, at 21 (M.D. Fla. Aug. 31, 2016)(attached as Exhibit C to Camagong Decl. in
22  Support of Motion) (Ford "is not conducting business within the state of Florida to such an extent
23  that, when compared to its business operations in other states, Ford is effectively a Florida
24  enterprise.").
25  Cases involving other defendants have similarly held.  *See, e.g. Wurth Adams Nut & Bolt*
26  *Co. v. Seastrom Mfg. Co. Inf.,* Civ. No. 14-03804 (WJM), 2015 WL 1530969, at *2 (D.N.J. Apr. 6,
27  2015) (though the defendant "benefited from the New Jersey market for several years" in light of the
28  "entirety of [its] activities, [it was] not comparable to a resident New Jersey corporation.");

5

*Tomelleri v. MEDL Mobile, Inc.*, No. 2:14-CV-02113, 2015 WL 1957801 at *4 (D. Kan. Apr. 29, 2015) ("For a global corporation…several thousand forum-related transactions might represent only a small fraction of its overall business, belying the argument that the defendant is 'essentially at home' in the forum").

Though Plaintiff attempts to distinguish *Bauman* because defendant there was a foreign company, the concurrence from Justice Sotomayor makes clear that *Bauman* is not limited to those facts:

> The present case and the examples posited involve foreign corporate defendants, but the principle announced by the majority would apply equally to preclude general jurisdiction over a U.S. company that is incorporated and has its principal place of business in another U.S. State.

*Id.* at 773, n.12; *see also Cahen*, 147 F.Supp.3d 955 (applying *Bauman* to preclude general jurisdiction over Ford); *Magill v. Ford Motor Co.*, No. 15SA332, at 10 (Colo. Sept. 12, 2016) (attached as Exhibit A to Declaration of Joan R. Camagong in Support of Reply ("Camagong Reply Decl.")) (applying *Bauman* to preclude general jurisdiction over Ford and noting that "[w]hether a nonresident corporate defendant is a resident of another country or another state is irrelevant to the general jurisdiction inquiry"). Further, Plaintiff's reliance on *State ex. rel Ford Motor Company v. McGraw*, No. 15-1149 (W. Va. May 18, 2016) for the proposition that *Bauman* is distinguishable because it involved a foreign defendant is misguided. Opp. To Motion to Dismiss at p. 2. Contrary to Plaintiff's assertion, the court there remanded that case because the factual record was not fully developed. *McGraw*, No. 15-1149, at 30-31, attached as Exhibit 1 to Plaintiff's Notice of Lodging; *see also Erwin v. Ford*, No. 8:16-cv-01322-T-24-AEP, at 20 (M.D. Fla. Aug. 31, 2016)(attached as Exhibit C to Joan R. Camagong Declaration in Support of Motion)(finding that *McGraw* does not endorse plaintiff's domestic limitation on *Bauman*).

Plaintiff's reliance on the Colorado State District Court's decision in *Magill v. Ford Motor Company* for the proposition that Ford is subject to general jurisdiction is also inappropriate. Opp. To Motion to Dismiss at p. 15. On September 12, 2016 – before Plaintiff filed his opposition – the Colorado Supreme Court *reversed* the very order Plaintiff relies on holding that "[u]nder [*Bauman*], the record in this case does not support a finding that general jurisdiction over Ford is appropriate."

Ex. A at 12. In so holding, the court dismissed the following Ford in-state contacts as "pal[ing] in comparison to the significant contacts that were deemed 'slim' in [Bauman]:" (1) marketing and sales through over thirty dealerships; (2) offices and businesses in Colorado; (3) the existence of a registered agent in Colorado; (4) training and certification of mechanics in the state; and (5) Ford's active litigation in Colorado. *Id* at 11-12. Accordingly, Ford's California contacts are similarly lacking.

Plaintiff also cites to an Illinois case, *Jeffs v. Anco Insulations, et al.*, in support of general jurisdiction. Opp. To Motion to Dismiss at p. 15. But, Plaintiff fails to indicate that earlier this year, the Illinois Supreme Court ordered the Fifth District Appellate Court of Illinois to hear Ford's discretionary appeal on a motion to dismiss for lack of personal jurisdiction, casting doubt on the correctness of the trial court's unpublished decision. *Jeffs v. Anco Insulations Inc., et al.*, No. 5-15-0529 (Ill. App. Ct. July 6, 2016) (attached as Exhibit B to Camagong Reply Decl.).

Plaintiff's remaining arguments either misunderstand the general jurisdiction analysis post-*Bauman*, or otherwise raise irrelevant issues. Plaintiff argues that Ford's reliance on *Goodyear* is misplaced. But Ford does not rely on *Goodyear* except insofar as *Bauman* relies on and clarifies *Goodyear*. Even assuming *Goodyear* is distinguishable, *Bauman* is more recent, more controlling, and less distinguishable from the facts of this case. Thus, even if *Goodyear* is distinguishable because the defendant lacked meaningful connections with the forum state, *Bauman* has already addressed how *Goodyear* ought to be applied where such connections do exist but do not rise to the level required to impose general jurisdiction. Distinguishing *Goodyear* is a smokescreen designed to hide the fact that Plaintiff cannot meaningfully distinguish *Bauman*.

Given the above, it is clear that Ford is not at home in California, and therefore is not subject to general jurisdiction here.

**II.   There is no Connection Between Ford's Forum Activities and Plaintiff's Claims**

Plaintiff relies on the newly decided state court case *Bristol-Myers* for the proposition that Ford's in state conduct is sufficiently related to the claims at issue so as to subject it to specific jurisdiction here. But, Plaintiff's reliance on this case is misplaced because it is non-binding on this Court and contrary to the test employed by controlling Ninth Circuit case law.

As Plaintiff cannot dispute, the Ninth Circuit has a pre-existing test to determine whether there is a sufficient connection between the forum state and the plaintiff's claims. Under this test a court must ask itself whether a plaintiff's claims "would have arisen but for [the defendant's] contacts with California." *Doe v. Unocal Corp.*, 248 F.3d 915, 924-925 (9th Cir. 2001); *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1131-1132 (9th Cir. 2003); *Payne v. Office of the Commissioner of Baseball*, Case No. 15-cv-03229, 2016 WL 1394369 at 6 (N.D. Cal. Apr. 8, 2016) (finding that plaintiffs' claims "would have arisen" absent defendant's California contacts and thus plaintiffs failed to establish that "the claims at issue arise out of or relate to the defendant's forum-related activities."). This test is the controlling test for this Court, even after *Bristol-Myers*. Because California's long-arm statute is coextensive with federal due process, the California Supreme Court's decision in *Bristol-Myers* was an interpretation of federal due process requirements, not of state law. As such, this Court should apply the Ninth Circuit's "but-for" test, which is more demanding than the one used by the California state courts. *Data Disc, Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1286 n.3 (9th Cir. 1977) (holding that "federal law is controlling on the issue of due process under the United States Constitution.").

Applying the Ninth Circuit's test, it is clear that no specific jurisdiction exists here. The subject vehicle was designed and manufactured elsewhere and sold as an incomplete vehicle to an independently-owned dealer in Minnesota. Ford's Opening Brief at 10. The liftgate was installed elsewhere, by a party other than Ford. *Id*; *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."). In short, the activities Plaintiff alleges caused his injury all occurred outside of and apart from Ford's activities in California. Plaintiff's injury would have occurred even if Ford had no contacts with California outside of its consumers reselling vehicles here. Accordingly, Ford is not subject to specific jurisdiction on this claim.

Given the above, it is clear that the claims here do not arise from, nor are they related to, Ford's contacts with California, no matter how pervasive those contacts. As such, no specific jurisdiction exists in this case.

### III. Plaintiff Has Failed to Show That Jurisdictional Discovery Will Produce Evidence Establishing Jurisdiction

Jurisdictional discovery in this case would be inappropriate. The relevant facts are uncontested. Ford did not manufacture, design or sell the subject vehicle in California. The subject vehicle was sold as an incomplete vehicle outside of California. In other words, Ford did not install the subject liftgate. This is sufficient to defeat Plaintiff's attempt to subject Ford to jurisdiction in California. No further discovery will change these essential facts.

Nevertheless, Plaintiff appears to seek jurisdictional discovery on three topics: 1) how the vehicle entered California, 2) Ford's involvement in the design, installation, or sale of the lift gate, and 3) the exact relationship between Ford and its dealers. Opp. To Motion to Dismiss at p. 23.

Plaintiff does not demonstrate that there is any likelihood that inquiries into these subjects would turn up anything relevant to this jurisdictional analysis. Instead, Plaintiff merely points out that Ford has not already offered evidence on these subjects. But Ford does not bear the burden of proving that jurisdiction is proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). In fact, "where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited [jurisdictional] discovery." *Getz v. Boeing Co.*, 654 F.3d 852, 860 (9th Cir. 2011) (internal citations omitted); *see also Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (holding that district court did not abuse its discretion by refusing jurisdictional discovery where the plaintiffs "state only that they 'believe' discovery will enable them to demonstrate sufficient California business contacts to establish the court's personal jurisdiction.").

Plaintiff cannot and has not met his burden to show that jurisdictional discovery is likely to produce facts needed to demonstrate that jurisdiction is appropriate. Plaintiff only identifies what Ford has not produced, without explaining why further discovery on those topics would be helpful. This is because these topics are irrelevant. How the vehicle entered California is irrelevant. Ford has already offered evidence that it sold the vehicle to an independent dealer in Minnesota, and did not sell it in California. Dwyer Decl., ¶¶ 5, 7. How the vehicle traveled, whether by sale between independent dealerships or sale to and between private owners, is irrelevant to determine whether

1  Ford is either at home in California or whether its conduct in California subjects it to specific
2  jurisdiction.
3        Second, Plaintiff attempts to argue that jurisdictional discovery should be permitted with
4  regards to Ford's involvement in the design, manufacture and installation of the subject lift gate.
5  However, Plaintiff himself admits in his First Amended Complaint that Thieman Tailgates, Inc.
6  designed and manufactured the subject lift gate. *See* FAC, ¶ 27. Plaintiff also offers no evidence, not
7  even bare assertions, suggesting that such discovery would be likely to produce the facts he needs.
8        Finally, the relationship between Ford's dealers and Ford is, as pointed out, irrelevant to any
9  jurisdictional analysis. Ford dealerships are wholly independent business entities that interact with,
10 but are not controlled by, Ford. Plaintiff claims that Ford has not disclosed its exact relationship with
11 these dealers. This is not true; Ford has provided a declaration from Ford stating exactly what the
12 relationship between the dealers and Ford is, and copying the relevant portion of the contract
13 between dealers and Ford. Dwyer Decl., ¶¶ 9-10. No further discovery is necessary on this subject
14 absent some evidence that this declaration, signed under penalty of perjury, is untrue.
15       Accordingly, Plaintiff has "established no connection between any claim asserted in this case
16 and any action [by Ford in California], and [has] provided no indication as to what discovery might
17 possibly demonstrate facts sufficient to constitute a basis for jurisdiction." *Mehr v. Federation*
18 *Internationale de Football Association*, 115 F.Supp.3d 1035, 1054 (N.D. Cal. 2015). Thus,
19 jurisdictional discovery is inappropriate in this matter.

## CONCLUSION

For the reasons stated above, the Court should dismiss this action pursuant to Rule 12(b)(2) for lack of personal jurisdiction over Ford.

Date: September 27, 2016           Respectfully submitted,

                                        SHOOK, HARDY & BACON L.L.P.

                                        By: ____*/s/ Joan R. Camagong*____
                                              RANDALL HAIMOVICI
                                              AMIR NASSIHI
                                              JOAN R. CAMAGONG

                                              Attorneys for Defendant
                                              FORD MOTOR COMPANY