UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SULLIVAN,<br><br>        Plaintiff,<br><br>    v.<br><br>FORD MOTOR COMPANY, et al.,<br><br>        Defendants. | Case No.16-cv-03505-JST<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>ECF No. 24 |

    Before the Court is Defendant Ford Motor Company's motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). For the reasons set forth below, the Court grants the motion.

**I.    BACKGROUND**

    On April 25, 2016, Plaintiff Michael Sullivan filed suit against Ford Motor Company ("Ford") and Theiman Tailgates, Inc. ("Theiman") in California state court. Ford moved to quash Sullivan's complaint for lack of personal jurisdiction. On June 23, 2016, Theiman removed the case to this court, and Ford re-noticed its motion to quash as a motion to dismiss under Rule 12(b)(b) on July 15, 2016. ECF Nos. 1, 17.

    On July 29, 2016, Sullivan filed his First Amended Complaint ("FAC"). ECF No. 18. In the FAC, Sullivan alleges that he was injured on April 25, 2014, while delivering food products to inmates at the Santa Rita prison in Dublin, California. Id. at ¶ 29. Sullivan claims he was driving a Ford truck equipped with a Theiman lift gate. Id. He alleged that he exited "the back end or cargo area" of the truck and stood on the lift gate when "suddenly and without warning . . . [t]he metal plates of said lift gate opened up causing [Sullivan's] legs to drop several feet downward."

1    Id. The lift gate then closed, trapping Sullivan's legs between the lift's metal plates. Id. Sullivan
2    alleges that he suffered serious injuries to his lower extremities, spine, and torso. Id. He attributes
3    his injuries to defects in the Ford truck and in the Theiman lift gate. Id. at ¶ 2.
4        Theiman answered the FAC, ECF No. 23, and Ford renewed its motion to dismiss for lack
5    of personal jurisdiction, ECF No. 24. Ford argues that this Court lacks general jurisdiction over it
6    because Ford is not incorporated in California, does not have its principal place of business in
7    California, and is not otherwise "at home" in California. Id. at 7. Nor, Ford argues, is there
8    specific jurisdiction, because Ford manufactured the truck at issue in Kentucky, sold it to an
9    independently-owned dealer in Minnesota, and had no role in installing the lift gate that ultimately
10   malfunctioned in California. Id. at 16.

## II.   LEGAL STANDARD

    When a defendant objects to the Court's personal jurisdiction over it pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing that jurisdiction is proper. Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008). Absent an evidentiary hearing, however, the plaintiff need only make a prima facie showing of personal jurisdiction. Id. Uncontroverted allegations in the plaintiff's complaint must be taken as true, and "[c]onflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." Id. (quoting Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004)).

    "Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." Schwarzenegger, 374 F.3d at 800. "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." Id. at 800–01. There are two types of personal jurisdiction: "general or all-purpose" and "specific or case-linked." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011). General jurisdiction permits jurisdiction over a defendant even when the claims at issue do not arise from or relate to activity in that forum. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 n.15 (1985). A court may assert general personal jurisdiction over defendants

United States District Court
Northern District of California

"when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear, 131 S. Ct. at 2851 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 317 (1945)). "Specific jurisdiction, on the other hand, depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Goodyear, 131 S. Ct. at 2851 (internal quotation marks omitted).

### III. DISCUSSION

#### A. General Jurisdiction

The Supreme Court recently clarified the scope of general jurisdiction in Daimler AG v. Bauman, 134 S. Ct. 746 (2014). Specifically, the Court explained that, compared with personal jurisdiction, "general jurisdiction has come to occupy a less dominant place in the contemporary scheme." Id. at 757-58. Indeed, the Court held that only in an "exceptional case" could a "corporation's operations in a forum other than its formal place of incorporation or principal place of business [] be so substantial and of such a nature as to render the corporation at home in that State." Id. at 761.[1] As the Court put it, "the inquiry under Goodyear is not whether a foreign corporation's in-forum contacts can be said to be in some sense continuous and systematic, it is whether that corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State." Id. at 761 (internal quotation marks and alterations omitted).[2] This Court concludes that it lacks general jurisdiction over Ford under Daimler's restrictive test.

In Daimler, the Court held that Daimler was not "at home" in California, even with the contacts of its subsidiary, MBUSA, attributed to it. MBUSA's contacts with California were substantial:

---

[1] The Court agrees with Sullivan that Daimler did not create a bright line test where general jurisdiction exists only in a defendant's state of incorporation or principal place of business, ECF No. 25 at 14, but it did restrict the reach of general jurisdiction beyond those two "paradigm all-purpose forums." Daimler, 134 S. Ct. at 760.

[2] The parties agree that Ford is not incorporated in, nor does it have its principal place of business in California. ECF No. 24 at 10; FAC ¶7. These cannot, therefore, be grounds for a finding of general jurisdiction.

3

> MBUSA has multiple California-based facilities, including a regional office in Costa Mesa, a Vehicle Preparation Center in Carson, and a Classic Center in Irvine. According to the record developed below, MBUSA is the largest supplier of luxury vehicles to the California market. In particular, over 10% of all sales of new vehicles in the United States take place in California, and MBUSA's California sales account for 2.4% of Daimler's worldwide sales.

Id. at 752. In his opposition to the motion to dismiss, Sullivan catalogues a similar list of Ford's contacts: business offices, including a regional headquarters in Irvine; a Research and Innovation Center in Palo Alto; active marketing of its vehicles for sale in California, over 200,000 Ford vehicles sold in California in 2015, and more. ECF No. 25 at 9-10. But if MBUSA's contacts were insufficient to confer general personal jurisdiction when attributed to Daimler, Ford's contacts likewise cannot make it "at home" in California. Given that Ford likely has a similarly strong business presence in many states, a finding of that Ford is "at home" in California would mean that Ford is "at home" in those states too. This would run afoul of Daimler's admonition that "[a] corporation that operates in many places can scarcely be deemed at home in all of them, [o]therwise, 'at home' would be synonymous with 'doing business.'" Daimler, 134 S.Ct. at 762 n. 20.

Another court in this district recently reached a similar conclusion as to Ford. Cahen v. Toyota Motor Corp., 147 F. Supp. 3d 955, 964 (N.D. Cal. 2015). In Cahen, Ford also had moved to dismiss on personal jurisdiction grounds. Explaining the lack of general jurisdiction, the court relied heavily on Daimler, noting that there, "the Court denied the exercise of general jurisdiction even though Daimler's subsidiary, whose contacts were imputed for the purposes of the Court's analysis, 'ha[d] multiple California-based facilities,' was the 'largest supplier of luxury vehicles to the California market,' and its 'California sales account[ed] for 2.4% of Daimler's worldwide sales.'" Id. (quoting Daimler, 134 S. Ct. at 752). Although it acknowledged the volume of Ford's business in California, the court refused to conclude that Ford was the "exceptional case" where "California c[ould] be considered Ford's surrogate place of incorporation or temporary place of business." Id. at 965. The Court finds no reason to reach a different conclusion here.[3]

---

[3] Sullivan also points to the fact that Ford has "continuously maintained its registration with the California Secretary of State since 1920" as weighing in favor of general jurisdiction. ECF No. 25 at 7. This court recently rejected similar arguments related to a Pennsylvania-based insurance

### B. Specific Jurisdiction

The Ninth Circuit has established a three-part test to determine whether a court has specific personal jurisdiction over a defendant: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." Schwarzenegger, 374 F.3d at 802. "The plaintiff bears the burden of satisfying the first two prongs of the test." Id. If the plaintiff does so, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Id.

For the purposes of this motion, the Court assumes that the first prong is satisfied by Ford's business presence in California, and instead focuses its attention on prong two. In this circuit, courts apply a "but for" test to determine whether a claim arises out of the defendant's forum-related activities. Doe v. Unocal Corp., 248 F.3d 915, 924 (9th Cir. 2001). The question is, but for Ford's conduct in California, would Sullivan's injury have occurred? LiveCareer Ltd v. Su Jia Techs. Ltd., No. 14-CV-03336-JST, 2015 WL 1448505 at *5 (N.D. Cal. Mar. 31, 2015). Sullivan's allegations on this point are weak and conclusory. He says only that "Ford's nationwide marketing, promotion, and distribution of cars and trucks created a substantial nexus between Plaintiff's claims and the company's contacts in California concerning Ford truck." ECF No. 25 at 23. Although Sullivan claims that Ford "defectively designed and manufactured the Ford truck, as well as the component parts associated with said truck, and that Plaintiff suffered catastrophic injuries as a result," he does not allege that Ford took those actions in California. Id.

By contrast, Ford's motion demonstrates that Sullivan's injuries did not stem from Ford's contacts with California, as extensive as those contacts may be. Ford submitted declarations that 1) the truck was not designed in California, ECF No. 24-2 at 2, 2) the truck was manufactured in

---

company. See Am. Ins. Co. v. R&Q Reinsurance Co., No. 16-CV-03044-JST, 2016 WL 5930589, at *2 (N.D. Cal. Oct. 12, 2016).

1  Kentucky, id., 3) the truck was sold to an "independently-owned Ford dealership, Boyer Ford
2  Trucks, Inc., located in Minnesota, id., 4) these independent dealers sign a contract that they are
3  not agents of Ford, id. at 3, and 5) the lift-gate was installed by someone other than Ford, id. at 2
4  (noting that the truck was sold to the Minnesota dealer as an "incomplete vehicle").  Given these
5  facts, which Sullivan does not contest, there is every reason to think that Sullivan's injury would
6  have occurred regardless of Ford's contacts with California.  In other words, Sullivan cannot
7  satisfy the Ninth Circuit's "but for" test.

8  Sullivan points to no binding authority where generalized allegations of business dealings
9  in a state, like those he has offered, have sufficed to satisfy the second prong of the Ninth Circuit's
10 test and confer specific jurisdiction over an out-of-state defendant.  Instead, Sullivan argues that a
11 more lenient test recently articulated by the California Supreme Court in Bristol-Myers Squibb
12 Co. v. Superior Court, 377 P.3d 874 (Cal. 2016), should control here.  In Bristol, the California
13 Supreme Court "explained that the relatedness requirement for specific jurisdiction is determined
14 under the substantial connection test, which is satisfied if there is a substantial nexus or connection
15 between the defendant's forum activities and the plaintiff's claim."  Id. at 885 (internal quotation
16 marks omitted).  In case there were any doubt that this test is different than the Ninth Circuit's, the
17 Court went on to say that "the defendant's activities in the forum state need not be either the
18 proximate cause or the 'but for' cause of the plaintiff's injuries."  Id.  Unfortunately for Sullivan,
19 "federal law is controlling on the issue of due process under the United States Constitution."  Data
20 Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1286 (9th Cir. 1977).  Therefore, this court is
21 "not bound by state cases, although they may be considered persuasive authority."  Id.  Given the
22 Ninth Circuit's clear articulation of the specific jurisdiction test in Doe, and the fact that this Court
23 has already applied that test in prior cases, see, e.g., LiveCareer Ltd, 2015 WL 1448505 at *5, the
24 Court declines Sullivan's invitation to follow the more lenient Bristol test.  Because Sullivan
25 cannot show that but for Ford's California contacts he would not have been injured by the Ford
26 truck and attached lift gate, the Court declines to exercise specific jurisdiction over Ford.[4]

---

[4] Because the Court concludes that Sullivan does not meet prong two, it does not address Sullivan's arguments regarding prong three, the reasonableness of the exercise of jurisdiction.

**C. Discovery**

In addition to opposing Ford's motion on the merits, Sullivan argues that the motion is "inchoate" until jurisdictional discovery takes place. ECF No. 25 at 26. The decision to grant jurisdictional discovery is a discretionary one. See Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1160 (9th Cir. 2006).

In his opposition, Sullivan suggests the need for discovery on three issues:

> Ford does not state how the Ford truck entered California be it through Ford or a Ford-authorized dealership. Nor is there any evidence submitted by Ford that Ford was uninvolved in the design, installation, or sale of the aforementioned lift gate. Furthermore, while Ford claims that its "Ford Sales and Service Agreement," allegedly entered into between Ford and each Ford California-based dealer, somehow "disavows" Ford from California-based contacts or exonerates Ford from product liability actions, notably missing from Ford's Motion is any such dealer agreement for the Court's consideration.

ECF No. 25 at 27. None of these issues relate to general jurisdiction; they all appear designed to elicit evidence that would demonstrate the existence of specific jurisdiction. But, as Ford explains, a Ford employee already stated in a declaration that Ford last had contact with the truck when it was sold to an independent dealer in Minnesota. Likewise, Ford's declarations state that Ford did not design the truck at issue in California, nor was it involved in the installation of the lift gate. And finally, Ford did provide the Court with the relevant text of its contract with dealers, showing that it does not consider those dealers to be its agents. See ECF No. 24-2. In other words, Ford's motion and supporting declarations already address all three issues identified in Sullivan's opposition brief. "[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery . . . ." Id. (citing Terracom v. Valley Nat. Bank, 49 F.3d 555, 562 (9th Cir. 1995)). Here, Ford has specifically denied the facts Sullivan appears to be seeking in his request for jurisdictional discovery. Accordingly, the court denies Sullivan's discovery request.

///

///

///

**CONCLUSION**

Ford's motion to dismiss for lack of personal jurisdiction is granted, and Sullivan's request for jurisdictional discovery is denied.

IT IS SO ORDERED.

Dated:  November 3, 2016

_____
JON S. TIGAR
United States District Judge